IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOCYELYNN S. CULBERTSON, ) | Case No. 1:24-cv-01847 |
| ) | |
| Plaintiff, ) | JUDGE DAVID A. RUIZ |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | REUBEN J. SHEPERD |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

### I.   Introduction

Plaintiff Jocyelynn Culbertson seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Culbertson's application for DIB be affirmed.

### II.   Procedural History

Culbertson filed for DIB on December 20, 2021, alleging a disability onset date of March 26, 2021. (Tr. 196). The claims were denied initially and on reconsideration. (Tr. 75-84, 86-96). She then requested a hearing before an ALJ. (Tr. 113). Culbertson (represented by counsel) and a vocational expert ("VE") testified before the ALJ on July 31, 2023. (Tr. 38-62). On September

13, 2023, the ALJ issued a written decision finding Culbertson not disabled. (Tr. 15-37). The Appeals Council denied her request for review on September 11, 2024, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; see 20 C.F.R. §§ 404.955, 404.981). Culbertson timely filed this action on October 23, 2024. (ECF Doc. 1).

**III.    Evidence**

    **A.    Personal, Educational, and Vocational Evidence**

Culbertson was 29 years old on the alleged onset date, making her a younger individual according to Agency regulations. (*See* Tr. 31). She graduated from high school. (*See id.*). In the past, she worked as a medical assistant and as a cashier. (*Id.*).

    **B.    Relevant Medical Evidence[1]**

Culbertson received mental health treatment from Chandravadan P. Patel, M.D., on March 29, 2021. (Tr. 540). She stated she had not been functioning well for the past two months. (*Id.*). She reported increased mental and physical health symptoms, including increased anxiety, IBS, headaches, kidney disease, and UTIs. (*Id.*). Culbertson stated she tried to use FMLA time to go from full-time work to part-time, but her paperwork was not processed properly. (*Id.*). She had resigned from her job because she felt unable to work full-time. (*Id.*). On examination, Culbertson was oriented, had a depressed mood and affect, but had normal thought process with no attention deficit, no impairment in abstract reasoning or concentration, no impairment in long term or short-term memory, and she had appropriate judgment in everyday situations and in social situations. (Tr. 541). Dr. Patel noted Culbertson had failed trials of Zoloft, Lexapro, and Luvox. (Tr. 542). He started her on Amitriptyline 100 mg and Trintellix 10 mg. (*Id.*).

---

[1] Culbertson raises error only with the mental health limitations included in her RFC. (ECF Doc. 6, pp. 6-11). I therefore limit my review of the medical evidence only to these issues and treat any as argument as to her other impairments waived. *See McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997).

On May 24, 2021, Culbertson attended a telehealth visit with David Lamport, PA, for medication review and refill. (Tr. 450-52). She reported chronic abdominal pain and requested a refill of Tramadol. (Tr. 450). Culbertson also reported doing much better on the amitriptyline 75 mg but requested a lower dose because it seemed to cause her problems with increased appetite. (*Id.*). PA Lamport refilled the Tramadol and recommended Culbertson slowly decrease her dose of amitriptyline to 25 mg daily. (Tr. 452).

Culbertson followed up with Dr. Patel on July 21, 2021. (Tr. 536). She reported that she had considerably improved since the last visit. (*Id.*). She had found a part-time job working 16 to 24 hours per week, which helped her take care of her multiple medical issues and to spend more time with her mother. (*Id.*). The reduced amitriptyline dose had caused a recurrence of her migraines and IBS; Dr. Patel agreed that an increase to 50 mg amitriptyline was appropriate. (*Id.*). On examination, Culbertson was oriented, had euthymic mood and affect, and all areas were noted as normal and appropriate. (Tr. 537). Dr. Patel continued Xanax, Ambien, and Trintellix, and increased amitriptyline. (Tr. 538).

On October 13, 2021, Culbertson had a telehealth visit with Dr. Patel. (Tr. 533). She reported that the new job was causing an increase in her anxiety, obsessive thinking, and depression, as well as difficulty paying attention and staying focused. (*Id.*). The increase in anxiety had also exacerbated her IBS symptoms. (*Id.*). Dr. Patel continued Culbertson's medications and recommended follow up in four weeks. (Tr. 535).

On January 5, 2022, Culbertson followed up with Dr. Patel. (Tr. 578). She reported that she continued to struggle with chronic multiple psychosocial stressors from her chronic illnesses. (*Id.*). She reported struggling with ADHD since she was in elementary school, but past treatment had focused on her physical health symptoms. (*Id.*). However, she reported significant functional

improvement and reduced obsessive thinking and ritualistic behavior since adding Adderall. (*Id.*). On examination, Culbertson had an anxious mood and affect and pressured speech, but all other areas were described as appropriate and normal. (Tr. 580). Dr. Patel continued Adderall, Xanax, Lexapro, Ambien, and Amitriptyline, and recommended follow up in 12 weeks. (*Id.*).

On February 7, 2022, Culbertson had an emergency telehealth visit with Dr. Patel, describing increasing flashbacks surrounding her father's death and mother's illness. (Tr. 575, 1049). She did not feel like she could continue working even part-time with the recurring flashbacks. (*Id.*). Dr. Patel continued all medications. (Tr. 576-77, 1050-51).

Culbertson met with Dr. Patel on February 23, 2022, as an emergency appointment. (Tr. 572). She reported that she was still having increased flashbacks and nightmares, insomnia, and increased migraines. (*Id.*). She had been missing work at her part-time job, and she gave her two weeks' notice to avoid being fired. (*Id.*). On examination, she was oriented x3, had an anxious and depressed mood and affect, with pressured speech and thought processes, she had impaired concentration and attention deficit, with a lack of energy. (Tr. 574). Dr. Patel continued Culbertson on all medications and recommended follow up in 12 weeks. (*Id.*). That same day, Culbertson met with Ashlee Armstrong, N.P. to discuss disability. (Tr. 587). Culbertson reported she had stopped working that month because of the amount of stress she was feeling, including PTSD, worsening anxiety and depression, migraines with aura, frequent UTI, kidney stones, and IBS. (*Id.*). She described having panic attacks when she has to work, with diarrhea and vomiting the night before and on the drive to work, as well as hives. (*Id.*). She felt she could not transition to a different job because of needing frequent bathroom breaks. (*Id.*). N.P. Armstrong recommended Culbertson continue to follow with specialists and suggested that the hives could

4

be stress induced, but she had not seen Culbertson in person for treatment of this condition. (Tr. 590).

Culbertson followed up with Dr. Patel on May 25, 2022, and reported that she continued to struggle with chronic anxiety, obsessive thinking, PTSD, migraine headaches, and IBS, despite taking all medications as prescribed. (Tr. 1043). She was taking care of her mother and her father-in-law, who needed assistance with their activities of daily living. (*Id.*). On examination, she was oriented x3, had depressive mood and affect, and lack of energy and motivation. (Tr. 1045). Dr. Patel continued her on all medications and recommended follow up in 12 weeks. (*Id.*).

On August 18, 2022, Culbertson reported to Dr. Patel that she continued to struggle with chronic anxiety, obsessive thinking, migraines, PTSD, and IBS with frequent nausea and vomiting. (Tr. 1040). She was taking her medications as prescribed and described them as being partially effective. (*Id.*). On examination, she was oriented x3, with a depressed and sad mood and affect. (Tr. 1042). Her examination was described as normal and appropriate, with no impairment in reasoning, concentration, or memory. (*Id.*). Dr. Patel continued Culbertson on all medications and recommended follow up in 12 weeks. (*Id.*).

On November 15, 2022, Culbertson presented to Dr. Patel for follow up. (Tr. 1036). She reported continued issues with multiple psychosocial stressors, including that she had recently experienced the death of two close family members. (*Id.*). On examination, she was oriented, with euthymic mood and affect; all other areas were described as normal and without impairment. (Tr. 1038). Dr. Patel continued Culbertson on all medications and recommended follow up in four months. (*Id.*).

On March 7, 2023, Culbertson followed up with Dr. Patel, and described having "minor" fluctuations in anxiety, obsessive thinking, and at times obsessive thinking leading into "minor" episodes of depression. (Tr. 1032). She continued to provide care for her mother and father-in-law. (*Id.*). On examination, she was oriented and had a depressed and sad mood and affect, but was otherwise described as normal and appropriate without impairment. (Tr. 1034). Dr. Patel continued her on all medications and recommended follow up in 12 weeks. (*Id.*).

On June 20, 2023, Culbertson followed up with Dr. Patel. (Tr. 1028). She reported that because of the combination of her medical and psychiatric impairments, she was unable to be employed for almost a year. (*Id.*). She reported doing most of her activities of daily living at home and household chores, was taking her medications as described, and denied any side effects. (*Id.*). On examination, she had a depressed mood and affect, but was otherwise described as normal, appropriate, and with no impairment. (Tr. 1030). Dr. Patel continued Culbertson's medications and recommended follow up in 12 weeks. (*Id.*).

      C.      **Medical Opinion Evidence**

State agency reviewing psychiatrist Kristen Haskins, Psy.D., reviewed the record at the initial level on February 8, 2022. (Tr. 82-83). She opined that Culbertson was capable of short cycle tasks with no fast pace and no strict production demands, could interact with others occasionally and superficially, and could adjust to minor changes, but would need major changes outlined in advance and then gradually phased in to allow time for adjustment. (Tr. 82).

On February 13, 2022, at the initial level, state agency reviewing physician Abraham Mikalov, M.D., reviewed the record and opined Culbertson could perform medium exertional work with the ability to frequently perform most postural activities except she had no limit on

6

her ability to balance, and could only occasionally climb ladders, ropes, and scaffolds. (Tr. 80-81).

At the reconsideration level on July 20, 2022, Gerald Klyop, M.D., reviewed the record and affirmed Dr. Mikalov's opinions. (Tr. 92-93). Robyn Murry-Hoffman, Psy.D., reviewed the record on July 9, 2022, and affirmed Dr. Haskins' opined limitations. (Tr. 94-95).

D. **Administrative Hearing Evidence**

On July 31, 2023, Culbertson testified before the ALJ. (Tr. 44). She testified that she had a driver's license, but it was unsafe for her to drive because of increased panic attacks while driving. (Tr. 44-45). She could drive short distances to the grocery store or to nearby appointments, but she would have friends or family members drive her for longer distances. (Tr. 45). She completed high school and a nine-month medical assistant program. (*Id.*). Her last job was part-time, on an as-needed basis to cover other employee absences. (Tr. 45-46). She stopped working in February 2022, because of migraines, kidney stones, UTIs, and IBS. (Tr. 45-46). She also had remote work history as a part-time cashier, working 15 to 32 hours per week. (Tr. 48-49).

Culbertson stated that she was generally able to shower and dress herself, except for certain times when she had multiple kidney stones. (Tr. 50). She could load and unload the dishwasher and do laundry. (*Id.*). Her husband would do the grocery shopping because of her social anxiety and panic attacks. (Tr. 50-51). She did not go out to the grocery store or restaurants, but she would pick up online orders. (Tr. 51-52).

Culbertson described getting kidney stones about every other month; she follows up with a nephrologist every six months for kidney care. (Tr. 52). She generally managed to pass the kidney stones at home with pain medication and increased fluids; she has gone to the emergency

7

department for kidney stones when she cannot urinate. (Tr. 53). She described that she would get UTIs once a month, resolved with antibiotics. (*Id.*).

Culbertson testified that she has daily abdominal pain because of IBS, as well as internal and external hemorrhoids, and frequent heartburn. (Tr. 53-54).

She also had frequent migraines, lasting for 24-72 hours, with aura, light sensitivity, and vomiting. (Tr. 54). Her migraines worsened with stress, anxiety, and hormonal changes. (*Id.*). She was on a daily preventative of amitriptyline and Imitrex for acute migraines. (*Id.*).

Culbertson testified to significant mental health conditions, including PTSD, depression, anxiety, OCD, panic, and ADHD. (Tr. 54-55). She sees a psychiatrist, and is prescribed Ambien for insomnia, Lexapro for depression, Adderall, and Xanax for anxiety and panic attacks. (Tr. 57). Her family doctor encouraged her to stop working and admit into a psychiatric facility. (*Id.*). She tried to reduce her anxiety at work by being out of the public and working an office job, but did not succeed. (Tr. 56-57).

The VE then testified. (Tr. 58). He described Culbertson's past work as a medical assistant, DOT 079.362-010, light, SVP 6, skilled; and cashier, 211.462-010, SVP 2, unskilled, light. (Tr. 59).

The ALJ provided the following hypothetical: an individual of the same age, education, and work experience as Culbertson, who can perform light work with additional limitations including frequently climbing ramps and stairs, frequent stooping, kneeling, crouching, and crawling; occasionally climbing ladders, ropes, and scaffolds; no exposure to moving mechanical parts or unprotected heights, and no commercial driving; the individual can understand, remember, and carry out instructions for simple tasks; can occasionally interact with coworkers and supervisors, but never interact with the general public; the individual can make simple work

8

related decisions, can deal with occasional changes in a routine work setting explained in advance; they can perform no work that requires satisfaction of production quotas or involves assembly line pace; and the individual would be off-task five percent of the workday, exclusive of normal breaks and lunch periods. (Tr. 59-60).

The VE testified that this individual could not perform Culbertson's past work, but that they could perform other jobs at the light, SVP 2, unskilled level. (Tr. 60). These jobs included garment sorter, DOT 222.687-014, with 120,000 in the national economy; packager, DOT 559.687-074, with 110,000 jobs in the national economy; and laundry worker, 369.687-018, approximately 80,000 jobs in the national economy. (*Id.*).

The VE further testified that employers tolerate no more than one day per month absent, and off-task no more than 10 percent of the workday. (Tr. 61). There is no competitive work for an individual who must work in isolation. (Tr. 61-62).

## XVI. The ALJ's Decision

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

2. The claimant has not engaged in substantial gainful activity since March 26, 2021, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: medullary sponge kidney; chronic renal stones; irritable bowel syndrome; temporomandibular joint disease/headaches; obesity; anxiety; depression; attention deficit hyperactivity disorder; obsessive compulsive disorder; and posttraumatic stress disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequent climbing of ramps and stairs, stooping, kneeling, crouching, crawling; occasional climbing of

9

       ladders, ropes, or scaffolds; and can have no exposure moving mechanical parts, unprotected heights, and commercial driving. Mentally, the claimant retains the capacity to understand, remember, and carry out instructions for simple tasks; occasionally interact with coworkers and supervisors, but never with the general public; make simple work-related decisions; and deal with occasional changes in a routine work setting that are explained in advance. Additionally, the claimant cannot perform work that requires satisfaction of production quotas or that involves assembly line pace and will be off task 5% of the workday exclusive of normal breaks and lunch period.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 26, 1992, and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 26, 2021, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 20-32).

## XVII. Law & Analysis

### D. Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1. whether the claimant is engaged in substantial gainful activity;

10

    2.    if not, whether the claimant has a severe impairment or combination of impairments;

    3.    if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

    4.    if not, whether the claimant can perform their past relevant work in light of his RFC; and

    5.    if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner must produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and thus entitled to benefits. 20 C.F.R. § 404.1512(a).

    **E.**    **Standard of Review**

This Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d

at 241. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 749 (6th Cir. 2007).

## XVIII. Discussion

Culbertson brings one issue for this Court's review: Whether the ALJ accounted for all of the persuasive limitations opined by the state agency experts. (ECF Doc. 6, p. 2). In Culbertson's view, the ALJ's failure to include opined limitations from the state agency mental health experts – namely, that she should be limited to only superficial interactions with others – constitutes reversible error. (*Id.* at p. 6). Because the ALJ found the state agency reviewing opinions persuasive, and because those reviewers opined that Culbertson should have both occasional and

superficial interactions, Culbertson feels that omission from her RFC is in error. (*Id.* at pp. 6-11). She asserts, correctly, that "occasional" and "superficial" interactions respectively describe the quantity and quality of the interactions an individual might have with others. (*Id.* at pp. 8-9 (collecting cases)). She takes this one step further, however, by stating that the ALJ's silence in the omission of "superficial" from the RFC means that the ALJ meant for these terms to be interchangeable and renders it "impossible to discern when the ALJ's decision was supported by substantial evidence." (*Id.* at p. 9). Culbertson concludes that the ALJ's omission does not provide enough for this Court to trace the path of their reasoning and thus it must be reversed. (*Id.* at p. 11, quoting *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011)).

I disagree with Culbertson's contentions. As the Commissioner presents, an ALJ need not adopt every opined limitation, even where the ALJ finds the opinion wholly persuasive. (ECF Doc. 8, pp. 7-8). As the Commissioner explains, the ALJ adequately explained the included limitations and declining to include more restrictive limitations does not establish a violation of the substantial evidence standard. (*Id.* at p. 11). Thus, for the reasons below, I decline to recommend remand.

Before proceeding to Step Four of the sequential analysis, the ALJ determines a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The RFC is an assessment of a claimant's ability to work despite her impairments. *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011), citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 61 Fed. Reg. 34474, 34475 (1996). "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p. Relevant evidence includes a claimant's medical history, medical signs,

13

laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(a); *see also* SSR 96-8p.

When determining the RFC, the ALJ is required to "articulate how [she] considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At minimum, the ALJ must explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). According to agency regulations, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. This is the consistency standard. And the regulation specifies that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be. This is the supportability standard. See 20 C.F.R. § 404.1520c(c)(1)-(2).

As for whether the ALJ was required to include a "superficial" limitation in Culbertson's RFC, "the regulations make clear that a claimant's RFC is an issue reserved to the Commissioner and the ALJ assesses a claimant's RFC 'based on all of the relevant medical and other evidence of record.'" *Harris v. Comm'r of Soc. Sec.,* No. 1:13-cv-00260, 2014 WL 346287, at *11 (N.D. Ohio, Jan. 30, 2014) quoting 20 C.F.R. § 416.945(a). The RFC determination "is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). And an ALJ does not err simply because their RFC finding is based on their review of the claimant's medical record rather than repeating verbatim a physician's opinion of the claimant's limitations. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base [his] RFC finding on a physician's opinion, would, in effect, confer upon

14

the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." (quotation marks omitted)). With this, the Sixth Circuit has "rejected the argument that an [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018).

Following Sixth Circuit precedent, I likewise reject Culbertson's argument that the ALJ was required to incorporate all opined limitations in the RFC. The ALJ explained his reasoning:

> Dr. Haskins opined the claimant was capable of short cycle tasks with no fast pace and no strict production demands; occasional, superficial interactions with others. . . . Robyn Murry-Hoffman, Psy.D., reviewed the evidence on behalf of the State Agency at the reconsideration level on July 9, 2022, and affirmed Dr. Haskins' opinion. . . . the undersigned finds these prior administrative medical findings to be generally persuasive in assessing the claimant's mental functional limitations, restrictions, and residual functional capacity as of the alleged onset date of disability. The reviewing medical consultants based their opinions on a review of the record and supported their opinions with citations to the record, including the claimant's treatment history and activities of daily living. Moreover, these prior administrative medical findings are generally consistent with the evidence at the initial and reconsideration levels showing mostly intact psychological objective findings such as alertness, full orientation, and normal mood, affect, behavior, speech, though process and appropriate insight and judgment with respect to herself, her activities of daily living, and social situations. However, the undersigned has not adopted these prior administrative medical findings verbatim, noting some of the limitations are not in vocationally relevant terms. Additionally, the evidentiary record at the administrative hearing level supports somewhat greater mental limitations. Given the evidentiary record in totality, as well as evidence in the form of persuasive testimony from the claimant at the hearing, consistent with medical evidentiary record, supports the additional limitation to no interaction with the general public. . . . To limit her stress/anxiety (and related diarrhea that treatment notes show can be stress related), I have limited her to simple tasks, restricted her to no assembly line/production pace work, and limited her interaction with others.

(Tr. 30-31).

This excerpt of the ALJ's RFC determination sufficiently explains his reasoning with respect to the limitations opined by Drs. Haskins and Murry-Hoffman, and uses the Agency-required terms of "supportability" and "consistency." As the ALJ notes, he does not, nor is he required to, "adopt[] these prior administrative medical findings verbatim[.]" (Tr. 30; *see also Rudd*, 531 F. App'x at 728 *and Mokbel-Aljahmi*, 732 F. App'x at 401).

The ALJ here sufficiently explained his reasoning for including the selected mental health limitations, some in greater degree than those opined by Drs. Haskins and Murry-Hoffman, and some omitted. This explanation provides me sufficient detail to trace the contours of his reasoning and provide substantial evidence in support of his determination. The regulations and caselaw do not require more. I find no reason to overturn the Commissioner.

I therefore recommend the District Court affirm.

## XIX. Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Culbertson's application for DIB be affirmed.

Dated: April 22, 2025

Reuben J. Sheperd
United States Magistrate Judge

---

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of

16

the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entire report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).